# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ARROW WISSIUP,<br><br>Defendant. | MEMORANDUM DECISION AND<br>ORDER DENYING<br>MOTION TO SUPPRESS<br><br>Case No. 2:13-cr-00199-RJS<br><br>Honorable Judge Robert J. Shelby |

In December 2012, a Uintah County Sherriff deputy stopped Defendant Arrow C. Wissiup's car after a license plate record check revealed that the car's registered owner lacked a valid driver's license. Before initiating the stop, the deputy was unable to see who was driving the car. Once stopped, the driver identified himself as Arrow Wissiup, admitted that he was the car's owner, and acknowledged that he was driving without a valid license. Another deputy arrived on the scene and observed in plain view on Wissiup's passenger seat a gun and drug paraphernalia. Wissiup was arrested, and a federal grand jury later returned an Indictment charging him with one count of violating 18 U.S.C. § 922(g)(1), Felon in Possession of a Firearm and Ammunition. (Dkt. 1). Wissiup moves the court for an order suppressing the evidence gathered during the stop. (Dkt. 15).

Wissiup's motion presents the issue whether the Fourth Amendment's protection against unreasonable seizures prohibits an officer from initiating a traffic stop based only upon a record check showing that the car's owner has a revoked driver's license. Wissiup contends that the

deputy here lacked reasonable suspicion to stop him. Wissiup argues that although the deputy knew the driver's license of the car's owner had been revoked, the fact that the deputy could not see who was driving the car means that the ensuing traffic stop was impermissibly based merely on a "hunch" that the unlicensed owner was the person driving the vehicle. The United States responds that common sense and ordinary experience suggest that vehicle owners very often are the drivers of their own cars. Absent contrary information known to the officer, the United States contends reasonable suspicion properly exists where a vehicle registered to an unlicensed owner is found operating on the roads.

On June 6, 2013, the court held an evidentiary hearing on Wissiup's Motion to Suppress. Andrea Martinez appeared for the United States. Stephen Allred appeared on behalf of Wissiup. Two witnesses testified at the hearing, Uintah County Sheriff Deputies Christopher Gardenheir and Danny Caldwell. The parties' briefing was complete on July 17, 2013. After reviewing the evidence and the briefing, including the legal authorities cited therein, the court determines that further argument on the matter is unnecessary.

**FACTUAL BACKGROUND**

The facts surrounding the traffic stop are not disputed. In the dark, early morning of December 5, 2012, Uintah County Sherriff's Deputy Christopher Gardenheir observed a black Lincoln Town Car traveling in front of him, westbound on Highway 40 in Vernal, Utah. (Tr. at 5-7, 11). The Town Car's operator drove into the parking lot of a Maverik convenience store. (Tr. at 7). As Deputy Gardenheir continued down the road, he performed a routine computer record check of the Town Car's license plate. (Tr. at 7, 11). That check revealed that the Town Car's sole registered owner, Arrow Wissiup, had a revoked driver's license. (Tr. at 6-7).

Deputy Gardenheir parked and contacted fellow Uintah County Deputy Danny Caldwell, who was parked nearby at a 7-11 convenience store. (Tr. at 7, 12, 15, 21). Deputy Gardenheir explained that he was waiting for the Town Car, whose owner had a revoked license, to pull out of the Maverik parking lot so he could conduct a traffic stop. (Tr. at 15, 21, 23). Deputy Gardenheir could not clearly see the parked Town Car, as his view was obstructed. (Tr. at 13-14). The Town Car eventually exited the Maverik parking lot and resumed travel westbound on Highway 40. (Tr. at 8). The Town Car had dark tinted windows, which prevented Deputy Gardenheir from seeing into the vehicle as it passed. (Tr. at 8). Deputy Gardenheir was unable to ascertain how many occupants were in the car or the driver's gender. (Tr. at 8, 12).

Turning on his lights and sirens, Deputy Gardenheir stopped the Town Car. (Tr. at 8). He asked the driver—the car's lone occupant—if he was Arrow Wissiup. (Tr. at 9, 16). The driver confirmed that he was, and upon further questioning, Wissiup confirmed he lacked a valid driver's license. (Tr. at 9). Deputy Gardenheir found that Wissiup smelled of alcohol and had bloodshot eyes. (Tr. at 9). Wissiup denied having consumed any alcohol. (Tr. at 9).

By that time, Deputy Caldwell had arrived on the scene to assist as a "cover" officer. (Tr. at 9, 23-24). After exiting his patrol car, Deputy Caldwell approached the Town Car's passenger side door. (Tr. at 20). Shining a light into the car, he looked inside. (Tr. at 20). Deputy Caldwell saw a gun and what appeared to be a marijuana pipe on the front passenger seat. (Tr. at 20). He yelled to Deputy Gardenheir to inform him of the gun. (Tr. at 9, 20). Deputy Gardenheir then instructed Wissiup to exit the Town Car. (Tr. at 9). After briefly handcuffing Wissiup to perform a safety frisk, Deputy Gardenheir performed field sobriety tests, which Wissiup failed. (Tr. at 9-10). Wissiup was placed under arrest. (Tr. at 10).

**DISCUSSION**

The issue here is whether Deputy Gardenheir's decision to stop Wissiup's car was based upon reasonable suspicion, and thus permissible under the Fourth Amendment, when the stop was initiated solely on the basis of a computer record check revealing that the registered owner of the vehicle had a revoked driver's license, but where Deputy Gardenheir was unable to ascertain who was driving the vehicle. Particularly because Deputy Gardenheir observed nothing to contradict his common sense suspicion that the vehicle likely was being operated by its sole registered owner, the court concludes the traffic stop was supported by reasonable suspicion. Wissiup's Motion to Suppress must be denied.

The Fourth Amendment guards against unreasonable searches and seizures. U.S. CONST. amend. IV. A traffic stop amounts to a "seizure" and is constitutionally valid only if it is reasonable. *United States v. Gonzales,* 535 F.3d 1174, 1181 (10th Cir. 2008) (citations omitted). Because a routine traffic stop is a relatively brief encounter, it "is more analogous to a so-called *Terry* stop ... than to a formal arrest," and requires something less than probable cause to initiate. *Id.* (citations omitted); *Terry v. Ohio,* 392 U.S. 1, 22 (1968) (noting that "a police officer may in appropriate circumstances…approach a person for purposes of investigating possible criminal behavior even though there is no probable cause" to arrest).

The Tenth Circuit instructs that "a traffic stop will be held reasonable when, under the totality of the circumstances, the officer bears a 'reasonable suspicion' that criminal activity 'may be afoot.'" *United States v. Cortez-Galaviz,* 495 F.3d 1203, 1205-06 (2007) (quoting *United States v. Arvizu,* 534 U.S. 266, 273 (2002)). Suspicion is reasonable when the officer has "a 'particularized and objective' basis for thinking the detained individual is involved in criminal activity." *Id.* (quoting *United States v. Cortez,* 449 U.S. 411, 417 (1981)). An officer must have

"some level of objective justification," *INS v. Delgado,* 466 U.S. 210, 217 (1984), but she "need not rule out the possibility of innocent conduct as long as the totality of circumstances suffices to form a particularized and objective basis for a traffic stop." *Cortez-Galaviz,* 495 F.3d at 1206 (quoting *United States v. Vercher*, 358 F.3d 1257, 1261 (10th Cir. 2004)). Reasonable suspicion may be supported by "a showing considerably less than preponderance of the evidence." *Id.* (quoting *Vercher*, 358 F.3d at 1263).

The uncontested facts are that Deputy Gardenheir performed a routine computer record check of the Town Car's license plate. That check revealed that the car's owner was Wissiup, and that his driver's license had been revoked. It is a class C misdemeanor in Utah to operate a vehicle without a valid driver's license. UTAH CODE. ANN. § 53-3-202. Had Deputy Gardenheir ascertained that Wissiup was driving the car, he would plainly have had reasonable suspicion that a crime was afoot upon receiving the record check result confirming Wissiup's revocation.

But Deputy Gardenheir did not, and could not, ascertain who was driving the car. It was three o'clock in the morning. It was dark. The car's windows were deeply tinted. While parked at the Maverik convenience store, Deputy Gardenheir's view of the Town Car was obstructed. As it drove past Deputy Gardenheir's parked car, the car's tinted windows prevented him from seeing into the passenger compartment.

The question at this point is whether Deputy Gardenheir could reasonably suspect that Wissiup, the car's unlicensed owner, was unlawfully driving the vehicle. The Tenth Circuit's reasoning in *Cortez-Galaviz* provides guidance for answering this question. 495 F.3d 1203. The court there affirmed the denial of a motion to suppress drug evidence gathered pursuant to a traffic stop initiated after an officer's Utah insurance database record check for a Ford Explorer

yielded a "not found" report.[1]  *Id.*  The officer stopped the Explorer to investigate whether state insurance law requirements were met, and subsequently saw drugs in plain view.  *Id.* at 1205.  A passenger in the Explorer challenged the stop after charges were filed.

The *Cortez-Galaviz* court held the officer had reasonable suspicion to initiate a stop where he "had both particularized and objective information before him suggestive of a traffic violation," and was not "merely…wondering about [the Explorer's] insurance status as he might any other passing vehicle."  *Id.*  The "not found" report gave the officer "reason…to pluck this needle from the haystack of cars on the road for investigation of a possible insurance violation."  *Id.* at 1206.  Importantly, the court observed that the likelihood that a traffic violation was afoot might depend on who was driving the vehicle—the owner, with whom the "not found" insurance report was associated, or another driver who might otherwise be insured, even while driving the possibly uninsured Explorer.  495 F.3d at 1207.  Put another way, the court assumed it was possible a non-owner driver was insured and committing no traffic violation while driving the Explorer.  Notwithstanding this, the court concluded that the officer had a reasonable basis for suspecting a traffic violation sufficient to warrant the stop despite not knowing for certain who was driving the car.  495 F.3d at 1208, 1211.

In the *Cortez-Galaviz* court's view, "common sense and ordinary experience suggest that a vehicle's owner is, while surely not always, very often the driver of his or her own car."  *Id.*  To demand more, that an officer "know both the identity of the driver as well as the vehicle's insurance status," would go beyond what the law required, taking the court "from *Terry, Wardlow*, and *Oliver*'s authorization to investigate equivocal facts and into the land of requiring

---

[1] "Not found" was one of at least three possible responses to insurance database records, with the other two being "definitely insured" and "definitely not insured."  *Cortez-Galaviz,* 495 F.3d at 1204.

an officer to have probable cause before effecting any stop." *Id.* at 1207-08 (citing *Terry*, 392 U.S. 411; *Illinois v. Wardlaw*, 528 U.S. 119 (2000); *Oliver v. Woods*, 209 F.3d 1179 (10th Cir. 2000)) (other citations omitted).

With this guidance, the court concludes that Deputy Gardenheir acted properly and legally, relying on a "common sense" understanding that a car's owner is often its driver, when he stopped the Town Car after learning that Wissiup, its owner, had a revoked driver's license. The circumstances here may present a stronger case than in *Cortez-Galaviz* for finding that the officer had a reasonable suspicion that a crime was afoot. Deputy Gardenheir's record check report showing that the car's owner had a revoked license is more probative of criminal activity than *Cortez-Galaviz's* inconclusive "not found" insurance database report, which indicates the possibility that a vehicle owner might be committing a traffic violation.

Wissiup's efforts to distinguish *Cortez-Galaviz* are not compelling. He contends that the stop in that case was found to be reasonable because a possibly uninsured vehicle on the road amounts to a *per se* violation of law, regardless of who is driving. To the contrary, the Tenth Circuit noted the parties disagreed whether Utah law allowed uninsured vehicles on the road if a "non-owner driver independently carries insurance covering him or her," as urged by the defendant. The court expressly stated it would assume, for purposes of its analysis, that the defendant's interpretation was correct. 495 F.3d at 1207.

As the United States correctly observes in its briefing here, other courts that have considered the issue overwhelmingly conclude that an officer need not first ascertain the identity of the driver owner before initiating a traffic stop involving a vehicle with an unlicensed owner. *See, e.g., State v. Tozier,* 905 A.2d 836 (Maine 2006) (officer who learned that registered owner had a suspended license acted reasonably under Fourth Amendment in stopping car despite fact

7

that it was only known that driver was male); *State v. Pike,* 551 N.W.2d 919, 922 (Minn. 1996) (determining that regardless of whether or not trooper could actually ascertain a driver's gender before stopping him, stop was constitutional under the Fourth Amendment because "it is rational" for an officer to "infer that the owner of the vehicle is the current operator"); *State v. Panko,* 788 P.2d 1026 (Ct. App. Or. 1990) (finding stop to be based on reasonable suspicion when predicated on record check that registered owner's license was revoked, despite fact that officer could see only the back of the driver's head and could not tell the driver's age or gender; noting that it is "reasonable for the officer to suspect that the registered owner … is driving…unless other circumstances put him on notice that the driver is not the vehicle's owner.") (citations omitted).

In *State v. Hicks,* the New Mexico Court of Appeals considered under both the United States and New Mexico Constitutions the issue whether "an officer's knowledge that the registered owner of a vehicle has a revoked license provides reasonable suspicion to stop the vehicle when the officer makes no effort to determine, prior to the stop, whether the driver of the vehicle is the registered owner." 300 P.3d 1183 (N.M. App. 2013). The court held that such a stop violated no constitutional protections against unreasonable searches and seizures, even in light of New Mexico's "distinctly protective standards for searches and seizures of automobiles." *Id.* at 1186 (citations omitted).

Likewise, in *Armfield v. State*, the Indiana Supreme Court considered the legality under the United States Constitution of a stop on facts strikingly similar to those before the court. 918 N.E.2d 316 (Ind. 2009). At about 12:30 in the morning, the officer there checked a truck's license plate and learned that the truck's owner had a lifetime license revocation. The officer did not have a physical description of the owner, and, in any event, could not see into the truck

through its tinted windows. 918 N.E.2d at 317, n.1. The *Armfield* court held "that an officer has reasonable suspicion to initiate a *Terry* stop when (1) the officer knows that the registered owner of a vehicle has a suspended license and (2) the officer is unaware of any evidence or circumstances which indicate that the owner is not the driver of the vehicle." *Id.* at 321-22.

*Armfield*'s holding suggests that the outcome might have been different if, for example, an officer willfully ignores evidence within her apprehension which clearly indicates that a registered owner is not the driver. But those are not the facts here—Wissiup points to no evidence that Deputy Gardenheir willfully ignored facts suggesting that someone other than Wissiup was driving Wissiup's vehicle. To the contrary, the undisputed evidence is that Deputy Gardenheir was unable to determine before the stop who was driving. It was dark and the car windows were tinted, obscuring sight into the car. Doing more to ascertain the identity of the driver in this case may have been impractical, and possibly dangerous. The *Cortez-Galaviz* court emphasized the challenge an officer may face trying to "practicably and safely divine the identity of a driver of a moving vehicle." 495 F.2d at 1208; *see also Hicks,* 300 P.3d at 11 (noting that requiring officers to ascertain the identity of drivers before a stop under similar facts "could potentially jeopardize the legitimate law enforcement interest of removing drivers with revoked or suspended licenses from our roadways").

Finally, Wissiup offers no evidence that the database Deputy Gardenheir used to perform his record check of the Town Car's license plates was in any way unreliable. *See United States v. Equivel*, 2013 WL 3958372 (remanding back to district court issue whether Kansas officer had reasonable suspicion to stop a van with temporary Colorado tags based on a "no return" for insurance; dispatcher providing information to officer had also stated that "Colorado temp tags usually don't return" but district court failed to evaluate that fact fully in its legal analysis).

**CONCLUSION**

Deputy Gardenheir had reasonable suspicion to justify stopping the Town Car that Wissiup drove in the early morning of December 5, 2012. Deputy Gardenheir performed a record check showing that the Town Car's owner, Wissiup, had a revoked license. He could not see who was driving the vehicle due to the car's tinted windows and an obstructed view. It was reasonable for him to employ a common sense suspicion that Wissiup likely was driving his own car, particularly in the absence of any evidence suggesting otherwise. Defendant's motion to suppress the evidence gathered pursuant to the traffic stop (Dkt. 15) is DENIED.

DATED this 16th day of August, 2013.

BY THE COURT:

Robert J. Shelby
United States District Judge